19 F.3d 7
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
IN RE: GRAND JURY PROCEEDINGS.
 No. 94-1137.
 United States Court of Appeals,
First Circuit.
 March 8, 1994
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 Michael C. Andrews on brief for appellant.
 Donald K. Stern, United States Attorney, and Ernest S. DiNisco, Assistant United States Attorney, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Selya, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 This is an appeal from an order of the district court refusing to terminate appellant's commitment for civil contempt.
 
 I.
 
 2
 A grand jury in the district of Massachusetts has been investigating the operation of an alleged illegal gambling racket. Appellant was one of the targets of the investigation. He was indicted in February 1992 and, in October 1992, he pleaded guilty. Shortly before he was to be sentenced, appellant was subpoenaed to appear before the grand jury. Appellant refused to testify and, on January 8, 1993, the court granted use immunity. 18 U.S.C. Secs. 6002, 6003. Upon his continued refusal to answer questions, the government filed a petition for contempt. The district court held a hearing on January 22. At the hearing appellant's lawyer stated that the reasons appellant refused to testify, despite the grant of immunity, were that he was morally and ethically opposed to testifying against anyone and that he feared for his own safety and the safety of his ex-wife and children.
 
 
 3
 Appellant did not testify on his own behalf. His attorney added the information that appellant had not cooperated during the two and a half years leading up to his indictment, despite government efforts to secure his cooperation. He also emphasized that the government had not sought indictments against some of the individuals who decided to cooperate and, as for others who pleaded guilty pursuant to plea bargains, the government was recommending probation. In light of this and the long sentence appellant was facing due to his non-cooperation, he argued, it was plain that 18 months of further incarceration would not coerce appellant to testify. The court, relying, in part, on the fact that appellant had not yet spent any time in jail, held him in contempt and ordered him incarcerated pursuant to 28 U.S.C. Sec. 1826(a). Four days later, appellant was sentenced to a term of imprisonment of 78 months and a term of supervised release of three years. This sentence was stayed during the term of his civil contempt incarceration. Appellant did not pursue an appeal from the initial contempt order.
 
 
 4
 He then filed a motion to vacate the order of contempt on September 23, 1993-approximately eight months after he was held in contempt. The court denied the motion without a hearing and without findings of fact. Appellant also did not pursue an appeal from this denial. A second motion to vacate the contempt order was filed on January 20, 1994-a year from the order of contempt. In this motion, appellant repeated the arguments made in the initial hearing. He added that even after being indicted, he had continued to refuse to cooperate despite the promise of some leniency in the government's sentencing recommendation. Further, he argued, he had spent 12 of the maximum 18 months without changing his mind. Given the long criminal sentence he faces and the now three and a half years of silence, he asserted that there was no chance he would ever testify. Again, the court denied the motion by endorsement, without stating its reasons.
 
 II.
 
 5
 Appellant only argues, on appeal, that the district court, in denying his motion to vacate the contempt order, failed to make the required individualized determination that there still was a realistic possibility that continued incarceration would likely result in compliance with the order to testify. Thus, his only request is that we remand the case.
 
 
 6
 Appellant relies on Simkin v. United States, 715 F.2d 34 (2d Cir. 1983). Simkin acknowledged the "virtually unreviewable discretion" a district court judge has in deciding whether a civil commitment has lost "any realistic possibility of having a coercive effect." Id. at 38. Given the speculative nature of the decision, however, the court held that such deference is due "only if it appears that the judge has assessed the likelihood of a coercive effect upon the particular contemnor" by making "an individualized decision." Id. Appellant argues that the record here is ambiguous and that there is evidence that the judge did not make an "individualized" determination concerning the coercive nature of his incarceration. Specifically, he points to a question by the judge, at the initial hearing, as to whether appellant understood "the penalty" for refusing to testify.
 
 
 7
 We find appellant's argument unpersuasive. By the time of appellant's second motion, the court had before it the transcript from the initial hearing, appellant's current affidavit stating that he would never testify before the grand jury, and the memoranda filed by the parties. The only new "evidence" presented for the court's consideration is the length of time-one year-that appellant now has spent in jail under the contempt order. Because this factor was central to the court's initial decision to order the incarceration of appellant, we think that it is reasonable to assume that the district court, in deciding to deny appellant's motion for release, in fact, considered the time appellant has served without testifying.
 
 
 8
 Unlike Simkin, there is no evidence that the court here considered any factors other than the continued impact of incarceration on appellant. The reference to the "penalty" for not testifying was made in the initial hearing. The district court's decision arising out of that hearing is not before us. To the extent that appellant is arguing for a mechanical rule requiring a formal statement or finding in every case, we think that this case-in which the district court's view is evident from context-is not the occasion to consider imposing such a requirement. Apart from the lack of a formal finding, appellant has not argued that the district court's action is subject to reversal (for example, as clearly erroneous or demonstrably based on improper factors).
 
 
 9
 Nothing we say is intended to discourage district courts from explaining their actions in continuing a defendant's imprisonment for civil contempt. The longer such incarceration continues without effect, the more uncertain are the prospects that further incarceration will produce compliance. At some point and in some circumstances, continued incarceration might be hard to justify or, at the very least, would call for some explanation. But the district court has considerable latitude in evaluating these prospective effects, In re Grand Jury Proceeding (Doe), No. 93-2316, slip op. at 10-11 (1st Cir., Jan. 10, 1994), and we cannot say here that it has exceeded permissible bounds.
 
 
 10
 Affirmed.